### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 25-CR-00019 (RJL)** |
| | : | |
| **BENJAMIN GABRINSKI,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

On May 29, 2022, Defendant Benjamin Grabinski threw rocks at the Embassy of the People's Republic of China (the "PRC Embassy"), and shouted: "Next time, it's going to be a firebomb." Mr. Grabinski kept his promise. Eleven days later, on June 9, 2022, Mr. Grabinski returned with a homemade Molotov cocktail. Mr. Grabinski tried unsuccessfully to light it before throwing the device into the PRC Embassy. Mr. Grabinski was detained in relation to these offenses beginning on June 10, 2022. Over the past several months, the parties litigated a motion to dismiss for violations of the Speedy Trial Act before the Honorable Richard J. Leon. During the hearing on that motion, Judge Leon indicated that he was inclined to grant the motion to dismiss without prejudice and allow the Government to re-indict the matter. Judge Leon specifically indicated that he did not believe that Mr. Grabinski's detention status should change. On January 15, 2025, Judge Leon granted the Defendant's motion and dismissed Mr. Grabinski's case without prejudice. The Government re-indicted the case the following day, but at that point Mr. Grabinski had already been released.

Mr. Grabinski should be detained for the same reasons that he has been detained beginning on June 10, 2022. Mr. Grabinski is charged with a violation of 18 U.S.C. § 844(i) (Arson of Property Used in Interstate Commerce), giving rise to a presumption that there are no conditions

under which he can be released that would assure the safety of the community.   Mr. Grabinski has

no ties to Washington, D.C.   He has no family or friends here who can house him or watch him.

Based on his own statements, he traveled here from Chicago specifically to engage in this offense.

Even while detained, he has continued to espouse the belief that he is engaged in hostilities with

China, and there is no reason to believe he has resolved those beliefs.

For the following reasons, Mr. Grabinski should be detained pending trial.

## I.    <u>Procedural History and Applicable Authority</u>

On June 17, 2022, Mr. Grabinski was charged by indictment with Damage to Property

Used by Foreign Governments, in violation of 18 U.S.C. § 970(a) and Arson, in violation of 18

U.S.C. § 844(i) (the "First Indictment").   That same day, the Government moved for Mr.

Grabinski's pretrial detention.   The Government subsequently filed a memorandum in support of

Mr. Grabinski's detention on June 16, 2022 and a detention hearing was scheduled for June 17,

2022.   That hearing did not proceed as the parties jointly requested that Mr. Grabinski be

evaluated for competency.   Mr. Grabinski's evaluation was completed by October 15, 2022 and

a report was issued on October 27, 2022 by a board certified forensic psychologist (the "BOP

Report").   Following a competency hearing on January 6, 2023, the Honorable Robin M.

Meriweather found Mr. Grabinski was competent to stand trial.   The Government's motion for

pretrial detention was never ruled on.

On January 10, 2024, Mr. Grabinski filed a motion to dismiss for violations of the Speedy

Trial Act.   The motion was based on delays resulting from Mr. Grabinski's transport to and from

a BOP facility for competency proceedings, as well as an additional period of time when the parties

were engaged in plea negotiations.   On December 11, 2024, the motion was argued before the

Honorable Richard J. Leon.   Judge Leon indicated that he was likely to dismiss the First

Indictment without prejudice to give the Government the opportunity to re-indict the case.   The Government raised with the Court the concern that Mr. Grabinski might be released if the motion was granted and requested a hearing to address that concern should the Court decide to dismiss the case.   Judge Leon indicated that he did not believe there was any reason that Mr. Grabinksi should be released.

On January 15, 2024, the Honorable Richard J. Leon dismissed the First Indictment without prejudice for violation of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq*.   That same day, Mr. Grabinski was released from custody.   The Government re-indicted Mr. Grabinski the next day, on January 16, 2022, on the same charges: Damage to Property Used by Foreign Governments, in violation of 18 U.S.C. § 970(a); and Arson, in violation of 18 U.S.C. § 844(i) (the "Second Indictment").   That same day, the Honorable G. Michael Harvey issued an arrest warrant for Mr. Grabinski.

On January 21, 2025, Mr. Grabinski was arrested.   At Mr. Grabinski's initial appearance, held on the same day, the government orally moved for detention.   The Court set a hearing for detention and arraignment for January 27, 2025.   The government now respectfully submits this memorandum in support of pretrial detention pursuant to the above-reference provisions of the federal bail statute.

## II.    **Legal Authority and Argument**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).   The Act provides, however, for certain crimes, that there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the

community.  *See id.*  As is relevant to this case, the Act provides rebuttable presumptions for cases where there is probable cause to believe the defendant committed arson and bombing of property used in interstate commerce in violation of 18 U.S.C. § 844(i).  *Id*. § 3142(e)(3)(C). "For purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged."  *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).  Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer.  *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).  Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."  *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).  *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).  A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues.  *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

Because Ms. Grabinski is charged with a violation of 18 U.S.C. § 844(i), the Court must presume that no condition or combination of conditions will reasonably assure the safety of the

community.   A review of the 3142(g) factors makes clear that the defense cannot overcome these presumptions.

### A.  **Nature and Circumstances of the Offense Charged**

The nature and circumstances of the offenses charged weigh heavily in favor of detention. Mr. Grabinski attempted to throw a Molotov cocktail into a foreign embassy.   And this was not a spur-of-the-moment decision.   Mr. Grabinski planned this.   He traveled from Chicago to Washington, D.C. to express his anger at the Chinese government.   Once in Washington, he repeatedly harassed the Embassy and security personnel.

*May 20, 2022*

First, on May 20, 2022, an individual matching Mr. Grabinski's description (depicted below) was observed on surveillance video throwing rocks at the PRC Embassy.



*May 29, 2022*

On May 29—nine days later—at approximately 1:00 AM, Mr. Grabinski went to the PRC Embassy.   He approached the gate of the Embassy and a special police officer ("SPO-1") stationed there advised him not to walk behind SPO-1's vehicle.   Mr. Grabinski asked SPO-1 why he was there, and the SPO-1 informed him that he was working security.   Mr. Grabinski responding by shouting: "I think you should leave now."   Less than an hour later, Mr. Grabinski

returned to the PRC Embassy.   He was wearing the same clothes and carrying the same backpack as he had been earlier.   As Mr. Grabinski approached the PRC Embassy he crouched low to the ground and kept his right hand behind his back.   Mr. Grabinski then threw a large object toward the PRC Embassy, as depicted below.

 

SPO-1 could not tell what the object was but he could hear that it made a significant impact.   Mr. Grabinski then yelled: "Next time, it's going to be a firebomb," before leaving the area.   SPO-1 looked through the Embassy gate and observed some rocks in the general area where he had seen Mr. Grabinski throw the object.   Officers from the U.S. Secret Service responded to investigate and interviewed SPO-1 who provided a description of Mr. Grabinski.

At 1:55 AM, two Secret Service officers encountered Mr. Grabinski at the corner of Connecticut Avenue and Van Ness Street NW, approximately a five-minute walk from the Embassy.   He matched the description that officers had received earlier.   The Secret Service officers stopped Mr. Grabinski and identified him with his driver's license and Veteran Affairs card.   While stopped, Mr. Grabinski stated that he traveled from Chicago to Washington, D.C. to express his discontent for the Chinese government.   He further stated that he had thrown "a small rock," at the Embassy.   A Secret Service officer took a photograph of Mr. Grabinski and showed it to SPO-1 who had been stationed outside the PRC Embassy.   SPO-1 identified Mr. Grabinski

as the man who threw a rock at the Embassy, first using the photograph and then in person shortly afterwards.    After several unsuccessful attempts were made to contact the Embassy, Mr. Grabinski was allowed to leave.

<u>*June 9, 2022*</u>

On June 9, 2022, shortly after 7:00 AM, Mr. Grabinski returned to the PRC Embassy.   He approached the PRC Embassy carrying a Molotov cocktail.   Specifically, he was carrying a glass bottle filled with an accelerant and with a cloth extending from the neck of the bottle.   He attempted multiple times to light the Molotov cocktail with a cigarette lighter but was unable to do so.   He then threw the Molotov cocktail over the Embassy gate and into the Embassy, as depicted below. The device shattered in the courtyard without igniting.



*A photographic still shot of the defendant preparing to throw the device*



*A second photographic still shot of the defendant as he throws the device into the PRC Embassy*

A special police officer ("SPO-2") on scene witnessed Mr. Grabinski throwing the device and reported to U.S. Secret Service, providing a lookout for Mr. Grabinski.   At 7:07:28 AM, U.S. Secret Service broadcast the following lookout: "white male headed towards Van Ness down Connecticut Avenue."   Less than forty seconds later, a U.S. Secret Service officer broadcast "it looks like he's right there at the corner of Van Ness and Connecticut Avenue."

At 7:08 AM, U.S. Secret Service Sergeant Joshua Mas observed and stopped Mr. Grabinski at the intersection of Van Ness Street and Connecticut Avenue NW.   He handcuffed Mr. Grabinski to await backup.   At the time, Sergeant Mas was equipped with a handheld radio rather than an earpiece.   The handheld radio was audibly broadcasting as other U.S. Secret Service officers responded to the PRC Embassy and were describing the remnants of the device that had been thrown into the Embassy.   Mr. Grabinski heard these observations over the radio and responded: "I tried to light it, but it didn't work, so I just threw it."

Mr. Grabinski's intended target makes his conduct all the more concerning. The U.S. endeavors to protect foreign embassies and foreign government officials and staff on U.S. soil. How we treat attacks on foreign embassies on our soil is considered by foreign governments when determining how to treat attacks on U.S. embassies, consulate, and personnel.   Put differently, the failure to prosecute conduct by individuals like Mr. Grabinski could have consequences for our own citizens abroad.

As described in Section (C) *infra*, Mr. Grabinski has ████████████████████ ████████████████████████████████████████.   In the spring of 2022, Mr. Grabinski carried out that those threats.   Mr. Grabinski made the conscious decision to attempt to throw an explosive device—a Molotov cocktail[1]—into the PRC Embassy, risking the lives of all of the employees present that day.   The nature and circumstances of these offenses weigh heavily in favor of detention.

## B. <u>The Weight of the Evidence</u>

The weight of the evidence weighs heavily in favor of pretrial detention.   As discussed at length in a recent opinion by Chief Judge Howell, the "weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."   *United States v. Michael Blackson*, No. 23-CR-25 (BAH), ECF No. 18 at 20 (D.D.C. Feb. 6, 2023).   This is a "common-sense consideration," as "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a

---

[1] 18 U.S.C. § 844(j) defines an explosive device as an incendiary device within the meaning of 18 U.S.C. § 232(5).   This definition includes "any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone." *Id.*

present danger to himself or the community if the government's allegations later prove to be true."

*Id*.

Here, the evidence against Mr. Grabinski is overwhelming. As described above, surveillance footage captures Mr. Grabinski committing the alleged acts. Additionally, witnesses observed Mr. Grabinski committing the alleged acts. SPO-1 observed Mr. Grabinski throw rocks at the PRC Embassy on May 29. And SPO-2 observed Mr. Grabinski attempt to light a Molotov cocktail, and then throw the unlit Molotov cocktail into the PRC Embassy on June 9. More still, after both the May 29 and June 9 events, U.S. Secret Service officers observed and detained Mr. Grabinski two to three blocks from the PRC Embassy. On both occasions, the officers identified Mr. Grabinski through identification on him at the time.

The government also intends to present physical evidence at trial, including: evidence recovered from the PRC Embassy; and evidence recovered from Mr. Grabinski's backpack on June 9. As to the former, this evidence includes broken bottle fragments, a black sock, and a rubber band. An ATF analyst will testify that this evidence contained a heavy petroleum distillate ("HPD"), which is an ignitable liquid. Examples of HPDs include kerosene, Jet-A fuel, and diesel fuel. Additionally, an explosives expert from ATF will testify that this evidence, along with photographs from the scene, are consistent with an improvised incendiary weapon. As stated in that expert's report, the expert will testify that:

> This device was designed to produce a fire by aeration and ignition of the ignitable liquid. Lighting the cloth wick and throwing the device against a hard surface caused the container to break, aerating but failing to ignite the ignitable liquid. This device could have caused property damage and could cause injury or death to persons near the fire.

As to the latter—evidence from Mr. Grabinski's backpack—the government intends to introduce: a blue Bic lighter, and several pairs of black cloth socks.   The socks match the type found at the PRC Embassy.   These items are depicted below.



*A photograph of the blue lighter recovered from the defendant*



*A photograph of the socks recovered from the defendant*

11



*A photograph of the sock recovered from the Embassy*

Finally, at trial the government will also introduce statements that Mr. Grabinski made to law enforcement officers on May 29 and June 9, 2022.   On December 30, 2024, the Honorable Richard J. Leon issued an order denying Mr. Grabinski's motion to suppress those statements, including his statement on May 29 that "Next time, it's going to be a firebomb," and his statement on June 9 that, "I tried to light it, but it didn't work, so I just threw it."

Because the weight of the evidence is strong, it demonstrates that Mr. Grabinski is a danger to the community and increases the risk that he will not return to Court.   This weighs heavily in favor of detention.

### C.  **History and Characteristics**

The third factor, the history and characteristics of the person, also weighs in favor of detention.   The defendant's recent conduct demonstrates an escalation in criminal behavior.   As described in the BOP Report, ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████

According to the BOP report, ███████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████

On August 3, 2018, ████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

---

[2] An excerpt of his comments is attached as Exhibit 1.

[3] The full comment is attached as Exhibit 2.



In October 2020,

As documented in the BOP Report, during his forensic evaluation in 2022,

14

The BOP Report recommended that ████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████

After the BOP forensic evaluation, Mr. Grabinski continued to exhibit a fixation with China.  On October 19, 2023, he sent a hand-written letter to an AUSA on this case, which is excerpted below:[4]


i confess that i did not venerate THE LORD and the blasphemy i have spoken is the root of my sorrows: i reap what i sow: so i'm worthy of the iron i strike against. The P.R.C. is coercing the U.S.; and it's the tree that bears the fruit of jury tampering. people are filled with fear every time the media mentions

Then, on March 1, 2024, Mr. Grabinski sent another hand-written letter to a different AUSA on this case.   A portion of that letter is excerpted below:[5]

GOD (I AM) told me to attack the Peoples Republic of China: so i did; JESUS CHRIST/THE WORD

As described above, Mr. Grabinski has an extensive history of threatening the PRC Embassy, and his fixation on China continues today.   Mr. Grabinski's actions on June 9, along with his prior threats and ████████████████████████████████████,
demonstrate that no condition of combination of conditions would be sufficient to assure the safety

---

[4]  The full letter is attached as Exhibit 3.

[5]  The full letter is attached as Exhibit 4.

of the community were he to be released.

Mr. Grabinski also represents a serious flight risk. Upon information and belief, he has no fixed address in the D.C. Metropolitan area (or anywhere) and has no ties to the area. When Mr. Grabinski arrived in D.C., he was homeless.[6] Mr. Grabinski demonstrated that, despite being homeless, he has the means to travel great lengths within the United States, as he traveled here from Chicago to voice his frustration with the Chinese Government. Thus, the defendant represents a serious flight risk under these circumstances. There is nothing that would meaningfully limit the defendant's opportunity to abscond. Further, there is no one in this jurisdiction who can house or watch Mr. Grabinski should he be released. These facts, coupled with his criminal exposure, further establishes a flight risk and thus weighs in favor of detention.

### D. **Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. The charged offense involves Mr. Grabinski's use of an explosive device and demonstrates little regard for the safety of PRC Embassy employees. Indeed, Congress determined that such an offense[7] carries with it a rebuttable presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3)(C). Once a rebuttable presumption has been triggered, the presumption operates at a minimum to impose a burden of production on the defendant to offer some credible evidence to the contrary. *United States v.*

---

[6] Prior to that, ███████████████████████████████████ But according to the BOP report, ███████

███████████████████████████████████████

[7] Here, the defendant's inability to light the explosive device does not mitigate the seriousness of the danger posed to the community. Congress reflected this when they included 18 U.S.C. § 844(i), which includes attempt, in the list of those offenses under Section 3142(e)(3)(C). The defendant's mere possession of the explosive device was inherently dangerous to anyone nearby.

*Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).   And even if that happens, the presumption does not disappear entirely.   *See United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016) (quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial . . . To rebut the presumption, therefore, a defendant should "present all the special features of his case" that take it "outside the congressional paradigm")).

Mr. Grabinski traveled from Chicago to Washington, D.C., a city to which he has no known ties, to harass and throw rocks at the PRC Embassy.   He then threatened to return and, in fact, did return to "firebomb" the PRC Embassy.   This pattern raises serious concerns that he may once again return to the location to engage in criminal activity because he does not approve of the Chinese Government.   There is no reason to believe that his views with respect to China have changed.   The PRC Embassy remains in the same location that he has now visited multiple times. Mr. Grabinski still believes he is engaged in war with China and if released would attempt to re-engage in that war.

## Conclusion

For all of the foregoing reasons, there are no conditions that can assure the safety of the community if Mr. Grabinski was released and he should be detained pending trial.

Respectfully submitted,

Edward R. Martin, Jr.
United States Attorney

By:    /s/ Monica Svetoslavov
       Cameron A. Tepfer
       D.C. Bar No. 1660476
       Assistant United States Attorney
       Monica Svetoslavov
       D.C. Bar No. 252645
       Special Assistant United States Attorney
       United States Attorney's Office
       601 D. Street, NW
       Washington, DC 20579

18