UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )  Criminal Case No. 25-19 (RJL)<br>)<br>BENJAMIN GRABINSKI, )<br>)<br>Defendant. )<br>) | |

## MEMORANDUM OPINION
March 12, 2025 [Dkt. #12]

Defendant Benjamin Grabinski ("defendant" or "Grabinski") is charged by indictment with attempted destruction of property used by foreign governments and attempted arson. Indictment [Dkt. #1]. These charges stem from allegations that he threw an unlit Molotov cocktail at the Embassy of the Peoples' Republic of China (the "Embassy"). A Magistrate Judge ordered Grabinski released pending trial. *See* Min. Order (Feb. 4, 2025); Order on Release Ruling [Dkt. #13]. The Government appealed that decision to me. Gov't's Mot. for Emergency Stay and for Review and Appeal of a Release Order ("Gov't's Mot.") [Dkt. #12]. Grabinski opposes the appeal. Def.'s Opp'n to Gov't's Mot. ("Def.'s Opp'n") [Dkt. #14].

At the conclusion of a hearing on February 26, 2025, I granted the Government's motion for review and appeal and ordered Grabinski detained pending trial. Min. Entry (Feb. 27, 2025). Set out below are the written findings of fact and statement of reasons underlying my order. *See* 18 U.S.C. § 3142(i)(1) (requiring that a detention order "include written findings of fact and a written statement of the reasons for the detention"); *United*

1

*States v. Nwokoro*, 651 F.3d 108, 111–12 (D.C. Cir. 2011) (remanding to the district court for a preparation of the "findings of fact and a statement of reasons in support of [defendant's] pretrial detention").

I.   **BACKGROUND**

At the outset, it is important to note that this case's history stretches back further than Grabinski's indictment on January 16, 2025. Grabinski was previously indicted in 2022 for the same alleged conduct. *See* Indictment, *United States v. Grabinski*, No. 22-cr-221 ("*Grabinski I*"), ECF No. 11 (filed June 17, 2022). In that case, Grabinski was detained pending trial even though a ruling technically never issued on the Government's pretrial detention motion. *See* Order on Release Ruling 2; *Grabinski I*, 2025 U.S. Dist. LEXIS 8063, at *5 (D.D.C. Jan. 14, 2025). On January 14, 2025, the Court dismissed the indictment in *Grabinski I* without prejudice for violation of the Speedy Trial Act. *See* 2025 U.S. Dist. LEXIS 8063, at *12–13. The Government reindicted Grabinski on identical charges; that case, which I shall refer to as *Grabinski II*, is currently before the Court. *See* Indictment.

A.   Factual Background

The alleged facts underlying the indictment are as follows. On May 29, 2022, Grabinski went to the Embassy and told a special police officer stationed there "I think you should leave now." Gov't's Mot. 7. Grabinski briefly left the area only to return an hour later and throw a large rock at the Embassy. *Id.* at 7–8. He yelled "[n]ext time, it's going to be a firebomb," before leaving again. *Id.* at 8.

Less than two weeks later—around 7:00 a.m. on June 9, 2022—Grabinski returned to the Embassy with a Molotov cocktail. *Id.* at 9. He attempted to light the device but was unable to do so; nevertheless, he threw it, unlit, over the Embassy gate. *Id.* He was shortly thereafter stopped by U.S. Secret Service officers and arrested. *Id.* at 10.

B.   Procedural Background

Following the Court's dismissal of the *Grabinski I* indictment, the Government quickly reindicted Grabinski on January 16. *See* Indictment. The *Grabinski II* indictment charges him with (1) attempted violation of protection of property used by foreign governments, in violation of 18 U.S.C. § 970(a); and (2) attempted arson, in violation of 18 U.S.C. § 844(i). *Id.*

An arrest warrant issued for Grabinski, who turned himself into the U.S. Marshals on January 21, 2025. Magistrate Judge Harvey held an initial appearance, after which the Government filed a motion for detention pending trial. Gov't's Mot. for Temporary Detention Pending Trial [Dkt. #7]. Grabinski opposed pretrial detention. Def.'s Opp'n to the Gov't's Mot. for Detention [Dkt. #8]. During a hearing on February 4, Magistrate Judge Sharbaugh denied the Government's motion and ordered Grabinski released. *See* Min. Entry (Feb. 4, 2025); Order on Release Ruling. This appeal ensued. *See* Gov't's Mot. On the Government's motion, I stayed defendant's release pending my decision on the appeal. Min. Order (Feb. 6, 2025). I then held a hearing on February 26, 2025, granted the Government's motion for review and appeal, and ordered defendant detained. Min. Entry (Feb. 26, 2025).

3

## II. LEGAL STANDARD

### A.   Bail Reform Act

Under the Bail Reform Act (the "BRA"), the Court shall order pretrial detention if it finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). The latter requires the Government to establish the defendant is a danger by clear and convincing evidence. *See United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021).

In cases involving certain offenses, the BRA imposes a rebuttable presumption that no conditions could reasonably assure the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(e)(2). The presumption applies here, as Grabinski is charged with arson in violation of 18 U.S.C. § 844(i). *See* 18 U.S.C. §§ 3142(e)(3)(C); 18 U.S.C. § 2332b(g)(5)(B). Grabinski therefore must offer credible evidence to defeat the statutory presumption against release. *See United States v. Boykins*, 316 F. Supp. 3d 434, 436 (D.D.C. 2018). This burden of production is not heavy and the Government ultimately still bears the burden of persuasion. *Id.* Still, Grabinski must proffer some evidence to show that he should not be detained and, even if he provides some evidence, "the presumption does not disappear entirely." *See United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016); *see also United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption

4

favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.'" (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001))).

In deciding whether detention is necessary, the Court must consider certain statutory factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

B.   Standard of Review

The Court will review Magistrate Judge Sharbaugh's order *de novo*. While our Circuit has "not squarely decided the issue" of which standard applies when reviewing magistrate judges' detention orders, *see Munchel*, 991 F.3d at 1280, other Circuits addressing the issue have applied *de novo* review, as have other courts in this District, *see United States v. Blackson*, 2023 U.S. Dist. LEXIS 18988, at *14–18 (D.D.C. Feb. 6, 2023) ("In short, both the BRA and the Federal Magistrates Act lead to the conclusion that a district court reviews a magistrate judge's pretrial release or detention order *de novo*. Unsurprisingly, this view is shared by every circuit court to have addressed the standard of review under § 3145 . . . ). I find these cases persuasive and will apply *de novo* review.

III.  ANALYSIS

The Government asks the Court to overturn Magistrate Judge Sharbaugh's decision because Grabinski's history and the alleged conduct "raise[] serious concerns that he may once again return to the [Embassy] to engage in criminal activity." Gov't's Mot. 28. I

5

agree. The § 3142(g) factors support pretrial detention. As such, the Government has demonstrated by clear and convincing evidence that "no condition or combination of conditions will reasonably assure" the safety of the community if defendant is released. *See* 18 U.S.C. § 3142(e)(1).

    A.    <u>Nature and Circumstances of the Offense Charged</u>

The first factor is "the nature and circumstances of the offense charged, including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). This factor supports pretrial detention.

The Government alleges that Grabinski had a premeditated plan to throw a Molotov cocktail at a foreign embassy. This conduct, if proven, is serious. According to the Government, Grabinski "made the conscious decision to attempt to throw an explosive device—a Molotov cocktail—into the [] Embassy, risking the lives of all of the employees present that day." Gov't's Mot. 11. The allegations must also be taken in the context of diplomatic relations: "How we treat attacks on U.S. embassies, consulate, and personnel is considered by foreign governments when determining how to treat attacks on U.S. embassies, consulate, and personnel." *Id.*; *see also* Order on Release Ruling 6 ("[T]he offense is arguably more serious given that the intended target was a foreign embassy because if the roles were reversed—*i.e.*, if a criminal defendant abroad targeted a U.S. embassy with similar conduct—the United States would want the offense treated seriously for purposes of protecting its own citizens abroad.").

Grabinski was likely aware that people would be near the Embassy gate at 7:00 a.m. on a weekday. He knew from prior interactions that the Embassy staffed special police

6

officers at the gate even in the earliest hours of the morning. *See* Gov't's Mot. 7–8 (describing Grabinski's alleged interaction with a special police officer at the Embassy at 1:00 a.m.). In fact, on the day of the alleged offense, a special police officer *was* stationed at the Embassy. *See id.* at 10 (explaining that a special police officer on the scene witnessed defendant throwing the device). It is thus difficult, at this early stage of the case, to accept Grabinski's argument that "there is no indicia of intent to harm any individuals, merely to make a political point." *See* Def.'s Opp'n 10.

Grabinski's lack of success in lighting the Molotov cocktail does not diminish the seriousness of the conduct. The alleged facts reflect that he had "an extensive history" of threatening the Chinese Embassy before following through, *see* Gov't's Mot. 27; his failure at the final step of lighting the match does not negate this history. I therefore find that the first factor weighs heavily in favor of pretrial detention.

    B.    <u>Weight of the Evidence</u>

The second factor is the weight of the evidence against Grabinski. 18 U.S.C. § 3142(g)(2). This factor favors pretrial detention as well.

The Government describes the evidence as "overwhelming." Gov't's Mot. 12. It purports to have extensive, compelling, and admissible evidence, including surveillance footage of and witness statements regarding the alleged conduct; physical evidence, including the components of the device and the lighter; expert testimony regarding the nature of the device; and incriminating statements from Grabinski himself. *Id.* at 11–14. The Court previously denied Grabinski's motion to suppress his statements in *Grabinski I*.

7

*See* Mem. Order, *Grabinski I*, No. 22-cr-221, ECF No. 54 (filed Dec. 30, 2024). I thus find that this second factor weighs in favor of pretrial detention.[1]

### C. History and Characteristics

The third factor is Grabinski's history and characteristics, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." *See* 18 U.S.C. § 3142(g)(3). Here again I find this factor favors detention.

Grabinski has no criminal history of which the Court is aware. However, the Government points to a long and concerning history of threats against the Embassy, government buildings, and the U.S. president. Gov't's Mot. 23–26. Even if none of these instances manifested into a criminal record, they leave me wary to release Grabinski into the community pending trial.

Grabinski urges the Court to focus on his behavior during the approximately one week in which he was released from custody pending reindictment and rearrest. Def.'s Opp'n 9–10. During that brief span of time, Grabinski did not go near the Embassy, did not attempt to flee even though he was homeless, reconnected with his family, stayed in touch with counsel, and reached out to the Department of Veterans Affairs for assistance with housing and other benefits. Order on Release Ruling 9; Def.'s Opp'n 9–10. I applaud

---

[1] While Grabinski does raise arguments regarding whether the alleged Molotov cocktail was, in fact, an explosive device, the Court need not resolve this issue at this time. As defense counsel described during the hearing on February 26, 2025, that is an issue for "down the road." Rough Tr. of Feb. 26, 2025 Hearing at 10:5-23.

8

his behavior here. Nevertheless, I will not rely on one weeks' worth of compliance in predicting how Grabinski will behave if released for a longer period of time.[2] According to the Government, defendant made threats against the Embassy for years before acting on them; one weeks' worth of compliance does not provide me with sufficient assurances that he will not take action again.[3] The third factor thus weighs in favor of pretrial detention.

D.  <u>Nature and Seriousness of the Danger to the Community</u>

The fourth factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). This is a closer issue, but ultimately this factor favors detention as well.

Grabinski is accused of attempted arson. Gov't's Mot. 27. The parties agree that this type of offense carries a rebuttable presumption that no conditions could reasonably assure Grabinski's appearance at court and the safety of the community. *See* 18 U.S.C. § 3142(e)(2); Gov't's Mot. 27; Def.'s Opp'n 2. I find the presumption is particularly apt in a case such as this one, where the conduct allegedly involved "us[ing] an explosive device" with "little regard for the safety of [] Embassy employees." Gov't's Mot. 27. Defendant proffered some evidence—namely, his behavior while briefly released—to support releasing him pending trial. As explained in Section III.C. *supra*, this laudable but short

---

[2] The Court has scheduled trial to begin on May 12, 2025. Min. Entry (Feb. 27, 2025).
[3] Our Circuit has explained that courts should conduct a forward-looking analysis to determine whether the defendant "poses a concrete, prospective threat to public safety." *Munchel*, 991 F.3d at 1280. Whether or not Grabinski will be a prospective threat can be informed by looking at his history, though. *See id.* ("Thus, a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's *history*, characteristics, and alleged criminal conduct make it clear that he or she poses a concrete, prospective threat to public safety." (emphasis added)). I have considered both Grabinski's recent and older conduct; I weigh the older—but much longer—periods of time more heavily.

9

period of compliance does not outweigh Grabinski's history of threatening violence or the dangerous nature of the alleged conduct. Moreover, even if this evidence was more compelling, the presumption against release would not disappear entirely. *See Lee*, 195 F. Supp. at 125; *see also Stone*, 608 F.3d at 945–46 ("The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Magistrate Judge Sharbaugh found that certain conditions of release could mitigate any risk of danger or flight stemming from defendant's release. *See* Order on Release Ruling 10. Specifically, he proposed GPS location monitoring to ensure defendant does not return to the Embassy or leave Washington, D.C. *See* Proposed Order Setting Conditions of Release [Dkt. #10]; *see also* Def.'s Opp'n 13–14. The Court learned during the February 26, 2025 hearing, however, that Pretrial Services is unable to provide location monitoring for homeless individuals such as Grabinski:

> PRETRIAL OFFICER: . . . The [] issue here is we don't do GPS only. We do home incarceration which warrants a physical address 24 hours a day and we do home detention. . . . That physical address would need to be governed or oversaw every day, all day 24 hours a day. And because [Grabinski] would have [to] leave that shelter at some point during the day, there's no way for him to be in the shelter all day. That's the disconnect that we're having here with shelters.

Rough Tr. of Feb. 26, 2025 Hearing at 14:18–15:20; *see also id.* at 16:8–13 ("PRETRIAL OFFICER: . . . [P]retrial services doesn't offer a program that allows [] free movement.").

Since Grabinski cannot be placed on location monitoring, "has no ties to Washington, D.C.," and has "no family or friends here who can house him or watch him,"

I cannot be reasonably assured he will not return to the Embassy or flee the area. *See* Gov't's Mot. 2. Unfortunately, Grabinski does not have a support structure in place to ensure that he complies with the release conditions and avoids future misconduct.[4] Furthermore, even if the Court could impose location monitoring, this fourth factor still would not outweigh the first three factors, each of which supports pretrial detention.

### IV. CONCLUSION

Upon consideration of the charges in this case, the Government's motion, the evidence and arguments presented, and the entire record, I find that the statutory factors under 18 U.S.C. § 3142(g) favor pretrial detention. The Government has thus met its burden to establish, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably ensure the safety of the community should Grabinski be released pending trial. Accordingly, the Government's Motion for Review and Appeal of a Release Order is **GRANTED** and Grabinski shall remain in the custody of the Attorney General for confinement pending a final disposition in this case. An Order consistent with the above accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge

---

[4] The Court encourages Pretrial Services to investigate further whether location monitoring could, in the future, be a technologically feasible option for homeless defendants.