UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>BENJAMIN GRABINSKI,<br><br>Defendant. | Case No. 25-cr-19 (RJL) |

## Motion to Dismiss Indictment for Failure to Prosecute and for Repeated Violations of the Speedy Trial Act and Insanity Defense Reform Act

Benjamin Grabinski, through counsel, respectfully requests that this Court dismiss the Indictment in this case with prejudice for failure to prosecute, failure to comply with the Insanity Defense Reform Act (IDRA) in violation of that Act and his 5th Amendment due process rights, and for violation of his speedy trial rights under 18 U.S.C. § 3161 and the 6th Amendment. Mr. Grabinski's original indictment for the same conduct in 22-cr-221 (RJL) was previously dismissed without prejudice for a Speedy Trial Act violation. Despite that previous dismissal and counsel's reminders to the government that this case is pending and needs action taken, the government has abrogated its duty to prosecute. Thus, the Indictment should be dismissed with prejudice.

### Relevant Background

Mr. Grabinski is a 35-year-old army veteran with serious mental health issues and no criminal convictions. According to the government, on June 9, 2022, he attempted to throw a Molotov cocktail over the fence at the Embassy of the People's Republic of China. Although he was unable to light the cocktail, he nonetheless threw the bottle over the fence and into the Embassy's courtyard where it shattered on the ground. No fire occurred. No one was injured.

1

On June 10, 2022, Mr. Grabinski was arrested, charged by complaint, and appeared by telephone for his initial appearance in Court. On June 17, 2022, Mr. Grabinski was charged by indictment with two counts: (1) protection of property used by foreign governments, in violation of 18 U.S.C. § 970(a); and (2) arson, in violation of 18 U.S.C. § 844(i). *See* 22-cr-221(RJL), ECF No. 11. He was subject to competency proceedings during the pendency of that case and was held without bond until January 15, 2025, when this Court dismissed his case without prejudice for a violation of the Speedy Trial Act. Id at ECF 56. After the dismissal, Mr. Grabinski was reindicted on January 16, 2025, turned himself in on January 21, 2026, was ordered released by the Magistrate Judge, but ordered detained by this Court. Importantly, all motions were resolved on February 26, 2025. Nothing tolled the Speedy Trial Act between February 26 and April 9, 2025, when competency proceedings began. Mr. Grabinski was found by the BOP to be not competent on June 4, 2025. No hearing was held on that report, and nothing has tolled the Speedy Trial Act since that date.

  Mr. Grabinski has been held without bond since January 21, 2025. All told, he has been in pretrial custody for ***nearly 3 1/2 years*** for the same conduct. The violations now rise to the level of a Constitutional violation.

  For much the same reason as this Court's prior opinion, this new case must also be dismissed but given the government's repeated violations of Mr. Grabinski's rights and failure to prosecute[1], it should now be dismissed with prejudice.

---

[1] Undersigned counsel filed a status report on August 4, 2025, advising the Court and government that Mr. Grabinski had been returned to the District of Columbia. The Court ordered a status report be filed seeking the government's position by August 21, 2025. Counsel brought that order to the attention of the government on at least two occasions, but the government failed to file its position or a proposed order for future proceedings despite noting that it would do so.

**Argument**

**A. The Government Has Violated Mr. Grabinski's Right to a Speedy Trial under the Speedy Trial Act**

The "manifest purpose" of the Speedy Trial Act, as its name indicates, is to "ensur[e] speedy trials." *Bloate v. United States*, 559 U.S. 196, 210 (2010). In other words, the Act is designed to "quantify and make effective" the vital Sixth Amendment right that "the accused shall enjoy the right to a speedy and public trial." *Henderson v. United States*, 476 U.S. 321, 333 (1986) (White, J., dissenting); U.S. Const. amend. VI. The "Act serves not only to protect defendants, but also to vindicate the public interest in the swift administration of justice." *Bloate*, 559 U.S. at 211; *Zedner v. United States*, 547 U.S. 489, 501 (2006). And it "seeks to achieve 'efficiency in the processing of cases which is commensurate with due process.'" *United States v. Tinklenberg*, 563 U.S. 647, 657 (2011) (quoting H.R. Rep. No. 93–1508, p. 15 (1974)).

With these principles "firmly in mind," *Zedner*, 547 U.S. at 501, the Act establishes a general rule: a defendant's trial must commence within 70 days of indictment or arraignment (whichever occurs later), or else the court will dismiss the case. 18 U.S.C § 3162(a)(2). At the same time, the Act recognizes that there are valid reasons for delay in particular cases and therefore excludes specified "periods of delay" from the 70-day limit.

Here, the arguably excludable delays were from

1) January 21, 2025 to February 26, 2025 when the motions regarding detention were pending;

2) April 9, 2025 to April 11 when the motion for a competency evaluation was pending;

3

    **3)**  The 45 day period beginning April 11 for completion of a competency evaluation and preparation of a report;

    **4)**  Up to 10 days for transportation back to D.C.

Thus, the period February 27 to April 9 plus all the time since June 14, 2025, is presumptively non-excludable under the Speedy Trial Act. *See* § 3161(h)(1)(F).

Failure to bring a defendant to trial by the Speedy Trial Act's 70-day deadline "entitles him to dismissal of the charges." *Bloate*, 559 U.S. at 199. This sanction is mandatory and categorical. *See United States v. Taylor*, 487 U.S. 326, 332 (1988) (government conceding there is "no ambiguity in [the Act's] requirement that when such a violation has been demonstrated, 'the information or indictment *shall* be dismissed on motion of the defendant.'" (quoting § 3161(a)(2)) (emphasis added)).

Once Mr. Grabinski was found to be incompetent, it was incumbent on the government to ensure that he was committed to the custody of the Attorney General pursuant to Section 4241(d) for hospitalization in a suitable facility for such a reasonable period of time, ***not to exceed four months***, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." See 18 U.S.C. § 4241(d)(1). This process never commenced because of the dilatory actions of the government. Mr. Grabinski was not placed at a suitable facility and no restoration proceedings began, let alone concluded, during the four-month period. Instead, Mr. Grabinski has languished – first in Englewood FCI and then at the D.C. Department of Corrections.

    **B. The Government Violated Mr. Grabinski's Rights under the IDRA and his Due Process Rights under the Fifth Amendment**

Mr. Grabinski's rights under the IDRA have been violated, as have his Fifth Amendment

4

due process rights, and dismissal is the only appropriate and available remedy in this case. As numerous courts, including this one, have explained, and as discussed *infra*, "the Speedy Trial Act and IDRA work together to require the timely resolution of cases" where a defendant's competency is at issue. *United States v. Carter*, 583 F. Supp. 3d 94, 99 (D.D.C. 2022) (internal quotation marks omitted). "The Speedy Trial Act require[s] the parties to proceed expeditiously before" a defendant is "found to [be] incompetent. [A]fter that finding, IDRA requires the government to reach a decision on whether he can be restored to competence within a period 'not to exceed four months." *Id*. (alterations in original). In other words, once a defendant is found to be incompetent and the Speedy Trial clock stops ticking until he is restored to competency, the IDRA imposes limits on the time the Government has to attempt to restore a defendant to competency: "The specific time-limit in IDRA [ ] tempers the broad exclusion under subsection (h)(4) of the Speedy Trial Act," which permits the exclusion of time for "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent...... to stand trial." *Id.* (alterations in original). Otherwise, the statutory scheme would permit indefinite confinement of a defendant based solely on incompetence, which does not comport with congressional intent or constitutional guarantees of due process.

In *Jackson v. Indiana*, 406 U.S. 715 (1972), the Supreme Court held that state statutes that allowed for the indefinite commitment of a criminal defendant solely on account of incompetency violated the guarantee of due process. "At the least," the Court wrote, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson*, 406 U.S. at 738. In reviewing the federal statute governing competency-restoration determinations—that is, the predecessor of 18 U.S.C. § 4241(d)—the Court explained that to withstand constitutional scrutiny, the statute,

5

which contained no defined limits on how long a defendant could be held before determining whether competency could be restored, was governed by a "rule of reasonableness," under which a defendant could "be held only for a 'reasonable period of time' necessary to determine whether there is a substantial chance of attaining the capacity to stand trial in the foreseeable future." *Jackson*, 406 U.S. at 733.

In response to the due process concerns identified in *Jackson*, Congress enacted the Insanity Defense Reform Act. *See United States v. Magassouba*, 544 F.3d 387, 403 (2d Cir. 2008); *see also United States v. Donnelly*, 41 F.4th 1102, 1105 (9th Cir. 2022). The IDRA provides the comprehensive rules and procedures governing the process for competency determinations and restoration of incompetent defendants to stand trial. It also imposes independent time limits on pre-trial detention of incompetent defendants. The IDRA sets forth the process for determining a defendant's competency to stand trial, and proceeds in several steps, with several strict time constraints.

*First*, upon a party's motion, "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent," *see* § 4241(a), the IDRA requires the court to make a finding as to whether a preponderance of the evidence establishes that the individual is, in fact, incompetent. *See* § 4241(d). To make this determination the court must conduct a competency hearing. *See* §§ 4241(a), (c), & 4247(d). And prior to the hearing, the court "may order" a psychiatric or psychological examination, which allows the court to "commit the person for a reasonable period, but not to exceed thirty days[.]" § 4247(d). The statute specifically authorizes the court to order "a reasonable extension, but not to exceed fifteen days . . . upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant." *See id*. Thus, the maximum amount of commitment

authorized for the initial competency determination is 45 days. *See id.*

***Second***, if the court finds by a preponderance of the evidence that the defendant is mentally incompetent to stand trial, as happened here, "the court shall commit the defendant to the custody of the Attorney General" for "a reasonable period of time, ***not to exceed four months***, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." *See* § 4241(d)(1) (emphasis added). This is the longest timeframe in the IDRA, and unlike some other timeframes—*e.g.*, § 4247(d), discussed above—there are no allowances for extensions upon a showing of good cause.

***Third***, after the four-months has expired, the court may extend the evaluation period ***only*** "***if*** the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward." § 4241(d)(2)(A) (emphasis added). In other words, extension of the "reasonable period" must be predicated on a court finding that a substantial probability exists that he will attain competency in the foreseeable future; otherwise, the "statutory text leaves no room for debate: it authorizes evaluation for a period 'not to exceed four months.'" *United States v. Gamarra*, 308 F. Supp. 3d 230, 233 (D.D.C. 2018) (quoting § 4241(d)).

Here BOP found Mr. Grabinski to be not competent to stand trial. No hearing on the competency report was held and neither party disputed that finding. Yet four months have passed, and the government has taken no actions to transfer Mr. Grabinski to an appropriate facility. Mr. Grabinski has languished in USMS/BOP/DOC custody for 4 months. In *United States v. Carter*, Judge Friedrich considered a similar scenario and found a clear violation of the IDRA's four-month restoration provision. 583 F. Supp. 3d 94 (D.D.C. 2022). There, the court ordered the

7

defendant committed to the custody of the Attorney General for restoration proceedings pursuant to § 4241(d)(1) on September 1, 2020, but as of January 10, 2020, i.e., more than four months later, the Government had yet to transport the defendant to FMC Butner, citing bed space issues. *Id*. At 98. The court rejected the Government's argument that the IDRA's four-month period only begins once the defendant arrives at the treatment facility, holding that "the plain text of § 4241(d)(1) provides that the government 'shall hospitalize' an incompetent defendant as soon as the government obtains 'custody over him,'" which begins as soon as the Court orders the defendant committed to the custody of the Attorney General. *Id*. at 100. The court noted that "§ 4241(d)(1) does not mention delays in transporting defendants for hospitalization, let alone subject them to a different timetable," and "those delays must be part of the 'reasonable period of time, not to exceed four months.'" *Id*. In other words, "the government may not delay the four- month deadline by detaining an incompetent defendant in a non-hospital setting." *Id*. at 100-01.

Numerous courts, including other judges in this district, have embraced this straightforward analysis, which tracks the Supreme Court's ruling in *Jackson v. Indiana*, where they warned that

> a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen or release the defendant.

406 U.S. 715, 738 (1972). In *United States v. Gamarra*, for example, Judge Bates minced no words when rejecting the government's arguments that it can commit a defendant for an initial restoration evaluation beyond four months:

> ***The statutory text leaves no room for debate: it authorizes evaluation for a period 'not to exceed four months.'*** *Id*. (citing 18 U.S.C. §4241(d)(1)). Congress set this limit mindful of the Supreme Court's admonition in *Jackson v. Indiana*, 406 U.S. 715 (1972), that "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.' Nor did Congress set any provision for extending this four-month period, as it did for the initial thirty-day evaluation, which can be extended for up to fifteen more days. *See United States v. Magassouba*, 544 F.3d 387, 405 (2d Cir. 2008). ***The only manner by which a defendant can be kept in confinement beyond four months is through a court order finding that he has a substantial probability of attaining competency."*** *Id.* The government has therefore violated the Act.

*Gamarra*, 308 F. Supp. 3d 230, 233 (D.D.C. 2018) (emphasis added).

Circuit courts have come to the same conclusion. The Sixth Circuit held that: "We believe that this provision [§ 4241(d)] requires that a determination as to the individual's mental condition be made within four months, and that the individual cannot be held pursuant to section 4241 in excess of four months unless the court finds that the individual is likely to attain competency within a reasonable time." *United States v. Baker*, 807 F.2d 1315, 1320 (6th Cir. 1986). The Eleventh Circuit reached the same result: "The due process requirements of *Jackson* are met because the statute itself requires that the period of commitment be 'reasonable' for that purpose. The statute limits *confinement* to four months, whether more time would be reasonable or not." *United States v. Donofrio*, 896 F.2d 1301, 1303 (11th Cir. 1990) (emphasis added).

More recently, in *United States v. Donnelly*, the Ninth Circuit "declined to decide whether the statute allows some amount of pre-hospitalization confinement because the delay here falls outside any constitutional reading of the statute." 41 F.4th 1102, 1105 (9th Cir. 2022). The Court had "little difficulty concluding" that a pre-hospitalization commitment period— "whose purpose is simply to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility"—is unconstitutional and violates the IDRA when it "last[s] longer than the maximum time Congress permitted for the period of hospitalization

9

itself." *Id*. at 1106. The appropriate remedy is to order Mr. Grabinski's release and dismiss the indictment with prejudice.

The due process limit in *Jackson*, codified in § 4241(d)(1), is a limit on the time the case can remain pending (including the period of pretrial detention) once the defendant has been determined to be incompetent. It does not allow for any extensions. In other words, it does not matter whether the government has used the four months productively to make the restoration determination; or, as in this case, squandered the opportunity to perform an evaluation in a hospital setting within the constitutionally permissible timeframe. Congress determined that four months was sufficient to make the initial determination, and after that, the government must proceed with civil commitment or with demonstrated progress toward establishing competency. *See* §4241(d)(1)-(2).[2] The government has failed to do so here, and dismissal is required.

### C. Government has Violated Mr. Grabinski's Sixth Amendment Right to A Speedy Trial.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI. "Excessive delay in prosecuting a defendant after he is indicted or arrested violates this Sixth Amendment right." *United States v. Tchibassa,* 452 F.3d 918, 922 (D.C. Cir. 2006). *See Doggett v. United States,*

---

[2] 4 *See* S. Rep. No. 98-225 at 236, 1984 U.S.C.C.A.N. 3182, 1983 WL 25404 (1984) (noting that, "[i]n accord with the Supreme Court's holding in *Jackson v. Indiana,* commitment under section 4241 may only be for a reasonable period of time necessary to determine if there exists a substantial probability that the person will attain the capacity to permit the trial to go forward in the foreseeable future"); *see also United States v. Strong*, 489 F.3d 1055, 1061 (9th Cir. 2007) (observing that § 4241(d) "was enacted in response to the *Jackson* decision and echoed *Jackson*'s language"); *United States v. Donofrio,* 896 F.2d 1301, 1302 (11th Cir.1990) (same); *United States v. Shawar,* 865 F.2d 856, 864 (7th Cir.1989) (same); *United States v. Filippi,* 211 F.3d 649, 652 (1st Cir. 2000) (same).

505 U.S. 647 (1992) (eight-and-a-half year delay between indictment and arrest violated defendant's right to a speedy trial).

The Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), listed four factors to be assessed for speedy trial right claims: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 530. "[N]one of [these] factors . . . [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Id. at 533. Of these factors, however, "[t]he flag all litigants seek to capture is the second factor, the reason for the delay." United States v. Loud Hawk, 474 U.S. 302, 315 (1986). *See also United States v. Fernandes*, 618 F.Supp.2d 62, 68 (D.D.C. 2009) ("[T]he second factor -- who is to blame for the delay -- often dictates the outcome of cases.").

The length-of-delay factor "entails 'a double enquiry': First, '[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay . . ..'" Tchibassa, 452 F.3d at 923 (quoting *Doggett*, 505 U.S. at 651-52). Second, "once the accused makes this threshold showing, 'the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'" Id. (quoting *Doggett*, 505 U.S. at 652).

Per *Doggett*, "postaccusation delay" crosses this "presumptively prejudicial" threshold "at least as it approaches one year." 505 U.S. at 652 n.1. *See also United States v. Jones*, 524 F.2d 834, 849 (D.C. Cir. 1975) ("We have said that cases involving delays of more than six months are properly subject to inquiry and require justification."). Where, as here, the

11

government is negligent in failing to prosecute the matter pursuant to the IDRA, the critical "reason for delay" factor must weigh against the government. "'The government has an affirmative constitutional obligation to try the defendant in a timely manner, and thus, the burden is on the prosecution to explain the cause of the pre-trial delay.'" *United States v. Weaver*, 949 F.Supp.2d 73, 77-78 (D.D.C. 2013) (quoting *Fernandes*, 618 F.Supp.2d at 68 (internal quotation marks and citations omitted. "

The Supreme Court has made clear that of the different forms of prejudice that unreasonable delay could produce, it is "'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence" that is "'the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532). *See Barker*, 407 U.S. at 532 (time's erosion of exculpatory evidence and testimony "can rarely be shown"). As a result, as explained in *Doggett*, "we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." 505 U.S. at 655. "[S]uch is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness . . . and its consequent threat to the fairness of the accused's trial." *Id.* at 657.

In *Boone,* therefore, where "the Government negligently failed to arrest Defendant for four and a half years," Judge Kessler found that the fourth factor weighed in the defendant's favor and dismissed the indictment despite the fact that, "at this early point in his investigation, defense counsel is not able to identify 'exactly how [that delay] has prejudiced' his client." 2010 WL 11443840 (June 3, 2010) (denying government's motion to reconsider Boone, 706

F.Supp.2d at 77). *See also Weaver*, 949 F.Supp.2d at 82 (Judge Huvelle dismissing indictment; "because the Court finds that the government did not exercise reasonable diligence in arresting Weaver, prejudice is presumed . . . ."); *Fernandes*, 618 F.Supp.2d at 73 (Judge Bates dismissing indictment; "no showing of prejudice is required when the delay is over a year and attributable to the government. . . . If the government is more to blame for delay than the defendant, then prejudice is presumed.").

### D. The Dismissal Should Be with Prejudice

Mr. Grabinski respectfully requests that the Court dismiss the indictment with prejudice. "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: [1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." § 3162(a)(2). All factors weigh in favor of dismissal with prejudice.

*First*, although Mr. Grabinski is charged with two felonies, the circumstances of his offense demonstrate that no person or property was in serious risk of injury. Likely owing to Mr. Grabinski's mental issues, the conduct alleged reflects a failed attempt to light a bottle of rags on fire and toss it onto the grounds of the Chinese Embassy. Even if it had executed with maximum effect, there would have been a discrete damage to the area where the bottle thrown but no economic loss or damage to property and certainly no physical injury to another person. *See United States v. Caparella*, 716 F.2d 976, 981 (2d Cir. 1983) (holding that dismissal for Speedy Trial Act violation should have been with prejudice in part because felony mail theft is not a "serious" crime "absent exaggerating circumstances such as violence").

*Second*, the facts and circumstances that led to the immediate speedy trial violation here could have been avoided if the government had been at all attentive to Mr. Grabinski's situation. There is no evidence that the government took any step to ensure that Mr. Grabinski's transportation, evaluation, and treatment within the time limits of the IDRA or the Speedy Trial Act, despite the prior dismissal for speedy trial violations and this Court's insistence that the government provide regular updates on Mr. Grabinski's status. Instead, the government has acted as though it was forgone that any evaluation or treatment would take as much time as the BOP desired, regardless of the limitations set by this Court or the laws of Congress. *See United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir. 1990) (in dismissing with prejudice "the court may properly take into account a demonstrably lackadaisical attitude on the part of the government").

*Third*, in assessing "a violation of any of the Act's time limitations as negatively impacting on the administration of the Act," or the administration of justice, "[i]t must be remembered that a speedy trial is not only viewed as necessary to preserve the rights of defendants," but "[j]ust as significant is the protection it accords to society's interest in bringing criminals to justice promptly." *United States v. Caparella*, 716 F.2d 976, 981 (2d Cir. 1983). Dismissal with prejudice is warranted here because it "sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays" going forward. *Taylor*, 487 U.S. at 342. This is especially true where defendants with mental health issues are routinely subjected to lengthy delays to evaluate and treat their conditions and the government does not act with any sense of urgency for the defendant's and public's interest in procedures or resources for expeditious resolution. *Id*. at 338-39 (recognizing that a "pattern of neglect" would support a dismissal with prejudice). *See United States v. Bert*, 814 F.3d 70, 81 (2d Cir. 2016) (a

14

finding of a "truly neglectful attitude" can tip the facts and circumstances in favor of a dismissal with prejudice).

*Finally*, this Court also should consider the actual prejudice to Mr. Grabinski, who has been charged and held in custody now for over three-and-a-half years without a trial. By prolonging this case, the government has infringed on Mr. Grabinski's liberty and thereby exacted a toll from him in disregard of due process and his presumption of innocence. The government's indifference has obviously prejudiced Mr. Grabinski. "The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty," for "'whether he is free on bail or not, . . . [the delay] may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'" *Taylor,* 487 U.S. at 340 (quoting *Barker v. Wingo,* 407 U.S. 514, 537 (1972) (White, J., concurring) (quoting *United States v. Marion,* 404 U.S. 307, 320 (1971))). Dismissal with prejudice is necessary when, as here, the government has repeated the same conduct that resulted in the first dismissal.

## Conclusion

For the above reasons, Mr. Grabinski respectfully requests that the Court dismiss the indictment with prejudice and order his immediate release.

Respectfully submitted,

A. J. KRAMER
Federal Public Defender

_____/s/_____
MICHELLE PETERSON
Chief Assistant Federal Public Defender
Federal Public Defender's Office
625 Indiana Ave NW, Suite 550
Washington, D.C. 20004
