# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal Case No. 25-19 (RJL)** |
| | ) | |
| **BENJAMIN GRABINSKI,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION
January _16_, 2026 [Dkt. #25]

Before the Court is defendant Benjamin Grabinski's motion to dismiss the indictment in this case for failure to prosecute and for violations of the Speedy Trial Act, 18 U.S.C. § 3161; the Insanity Defense Reform Act, 18 U.S.C. § 4241; and the Sixth Amendment. Mot. to Dismiss [Dkt. #25]. Upon consideration of the parties' briefing, the oral argument held on December 11, 2025, and the relevant law, I will **GRANT** defendant's motion to dismiss and the Indictment will be **DISMISSED** with prejudice.

## I.    BACKGROUND

Defendant is charged by indictment with attempted destruction of property used by foreign governments and attempted arson. Indictment, *United States v. Grabinski* ("*Grabinski II*"), No. 25-cr-19 [Dkt. #1]. As detailed in my previous opinion granting the Government's motion for pretrial detention, *see* Mem. Opinion, No. 25-cr-19 [Dkt. #16], these charges stem from allegations that defendant threw an unlit Molotov cocktail at the Embassy of the Peoples' Republic of China in June 2022. One month earlier, defendant allegedly threw a rock at the Embassy, yelling to a police officer stationed nearby, "[n]ext

1

time, it's going to be a firebomb." *Id.* at 2.  Less than two weeks later, around 7:00 am on

June 9, 2022, defendant returned to the Embassy with a Molotov cocktail.  He attempted

unsuccessfully to light the device and then threw it, unlit, over the Embassy gate.  No one

was injured.  He was stopped shortly thereafter by federal agents and arrested.  *Id.* at 3.

Defendant was first indicted on June 17, 2022.  *See* Indictment, *United States v.*

*Grabinski* ("*Grabinski I*"), No. 22-cr-221 [Dkt. #11].  In that case, defendant was detained

pending trial.  *See* Order on Release Ruling, No. 22-cr-221 [Dkt. #10].   After his

indictment, the parties requested that defendant be evaluated for competency to stand trial.

He underwent a competency evaluation at the Metropolitan Correctional Center in

Chicago, Illinois, after which Magistrate Judge Meriweather found him competent to stand

trial and ordered his return to D.C. for further proceedings.  *See* Mem. Opinion, No. 22-cr-

221 [Dkt. #25].  The parties then engaged in plea negotiations and began preparing for trial.

On January 10, 2024, after nearly a year's worth of delay, defendant filed a motion to

dismiss for violation of the Speedy Trial Act.  On January 14, 2025, I granted defendant's

motion and dismissed the indictment in *Grabinski I* without prejudice.  *See* Mem. Opinion,

No. 21-cr-221 [Dkt. #56].

As expected, defendant was re-indicted on January 16, 2025.  *See* Indictment,

No. 25-cr-19 [Dkt. #1].  Like the first indictment, the second indictment charges him with

(1) attempted violation of protection of property used by foreign governments, in violation

of 18 U.S.C. § 970(a); and (2) attempted arson, in violation of 18 U.S.C. § 844(i).  *Id.*

Following a detention hearing on February 26, 2025, I ordered defendant detained pending

trial. *See* Mem. Opinion, No. 25-cr-19 [Dkt. #16]. Trial was then scheduled for May 12, 2025.

On April 9, 2025, however, the defense filed an unopposed motion to refer defendant for a competency evaluation. *See* Motion for Order of Competency, No. 25-cr-19 [Dkt. #19]. On April 11, I ordered defendant committed to the custody of the Attorney General for a psychological examination, after which the examiner was to file a written opinion on whether defendant was mentally competent to stand trial. *See* Order (Apr. 11, 2025), No. 25-cr-19 [Dkt. #21]. The Order further excluded delays resulting from the competency evaluation from Speedy Trial Act calculations. *Id.* To the extent the Government sought to exclude additional time, the Court noted that the Government could present arguments for exclusion in a motion or hearing. *Id.* at 3. Indeed, I ordered the parties to "request a status hearing regarding competency at an appropriate time." *Id.*

In June 2025, the Bureau of Prisons ("BOP") finally completed its report finding Grabinski mentally *incompetent*, and the report was published on the docket on August 5, 2025. *See* Sealed Competency Report, No. 25-cr-19 [Dkt. #24]. In a status report on August 4, 2025, the defense stated that BOP "recommended treatment to determine if [defendant's] competency can be restored, but the [U.S. Marshals Service] has not transported him to an appropriate BOP facility, but instead returned him to D.C." *See* Status Report, No. 25-cr-19 [Dkt. #23]. I then ordered the parties to submit a joint status report by August 21, 2025 and directed the Government to provide its position on defense counsel's request to transfer defendant to a treatment facility. *See* Min. Order (Aug. 14,

3

2025), No. 25-cr-19. The parties, however, never filed a joint status report, and the Government did not provide its position until October 2025.

On October 8, 2025, after two months of inaction from the Government and with still no status report, the defense filed a motion to dismiss the indictment for failure to prosecute, for repeated violations of the Speedy Trial Act, and for violations of the Sixth Amendment. *See* Mot. to Dismiss, No. 25-cr-19 [Dkt. #25]. Minutes later, the Government filed a status report agreeing with the evaluation that defendant is not presently competent to stand trial and requesting that the Court find defendant incompetent and commit him for competency restoration treatment. *See* Status Report, No. 25-cr-19 [Dkt. #26]. In the status report, the Government acknowledged that the Court had instructed the parties to file a joint status report on August 21, 2025, but stated that it had "inadvertently failed to file that report on that date." *Id.* Please!

The Government's response to the motion to dismiss was due October 22, 2025, but the Government once again missed its deadline. On October 27, 2025, the defense filed a motion to treat its motion to dismiss as conceded. *See* Motion to Treat as Conceded, No. 25-cr-19 [Dkt. #27]. On October 31, the Government finally filed its response in opposition to the motion to dismiss, along with a motion for leave to late file. *See* Motion for Leave to Late File, No. 25-cr-19 [Dkt. #28]. The defense replied on November 3, opposing the Government's motion for leave to file late. *See* Reply, No. 25-cr-19 [Dkt. #30]. This Court has since granted the motion for leave to late file and accepted the Government's response. *See* Min. Entry (Dec. 11, 2025), No. 25-cr-19.

On December 11, 2025, this Court heard oral argument on defendant's motion to dismiss. During argument, defense counsel argued that the case should also be dismissed under Federal Rule of Criminal Procedure 48(b). The Court allowed supplemental briefing on this issue. The Government filed a supplemental brief on Rule 48(b) on December 15, 2025. *See* Supp. Br., No. 25-cr-19 [Dkt. #33]. Defendant filed a reply later that same day. *See* Supp. Reply, No. 25-cr-19 [Dkt. #34]. The motion to dismiss is now ripe for consideration.

## II.    LEGAL STANDARD

### A.    Sixth Amendment

The Sixth Amendment promises that criminal defendants "shall enjoy the right to a speedy and public trial." U.S. Const., amend. VI. Since this guarantee is "necessarily relative," alleged violations are assessed based on a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Vermont v. Brillon*, 556 U.S. 81, 89–90 (2009) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). In *Barker*, the Supreme Court identified the following relevant factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* (quoting *Barker*, 407 U.S. at 530).

### B.    Federal Rule of Criminal Procedure 48

Federal Rule of Criminal Procedure 48(b) provides that a "court may dismiss an indictment . . . if unnecessary delay occurs in . . . bringing a defendant to trial." Fed. R. Crim. P. 48(b)(3). The Rule is a recognition of "the inherent power of the court to dismiss

5

a case for want of prosecution." *Mann v. United States*, 304 F.2d 394, 398 (D.C. Cir. 1962).

To say the least, dismissal under Rule 48(b) is strong medicine that should be applied "only in extreme circumstances." *United States v. Parga-Rivas*, 689 F. Supp. 2d 25, 30 (D.D.C. 2009). In analyzing whether a delay warrants dismissal under Rule 48(b), courts consider the same factors relevant for assessing Sixth Amendment violations. *See United States v. Hensley*, 2024 WL 3673612, at *10 (D.D.C. Aug. 5, 2024). While a few of my colleagues have noted that dismissal under Rule 48(b) is typically "imprudent" absent a violation of the Speedy Trial Act or the Sixth Amendment, *see Parga-Rivas*, 689 F. Supp. 2d at 30, others have recognized that Rule 48(b) "may be involved to protect the defendant's interest in a speedy trial" even *absent* a violation of the Sixth Amendment or the Speedy Trial Act, *see United States v. Starr*, 434 F. Supp. 214, 216–17 (D.D.C. 1977); *United States v. Gaffney*, 2025 WL 3123668, at *7 (D.D.C. Nov. 7, 2025); *Hensley*, 2024 WL 3673612 at *5 n.4. Our Circuit, however, has never held that Rule 48(b) may only be applied in the context of a Speedy Trial Act violation. Instead, it has recognized that Rule 48(b) "is a restatement of the inherent power of the court to dismiss a case for want of prosecution" and is "broader" than the "constitutional guarantee of a speedy trial." *Mann*, 304 F.2d at 398; *cf. United States v. West*, 2018 WL 7026445, at *7 (E.D. Va. Dec. 14, 2018) ("[C]ourts have power under Rule 48(b) to dismiss with prejudice even absent finding a constitutional violation.").

If dismissal under Rule 48(b) is appropriate, it "can be with prejudice." *Starr*, 434 F. Supp. at 216 (cleaned up). However, such a dismissal is typically without prejudice,

*West*, 2018 WL 7026445, at *7, unless the defendant demonstrates "'a pattern of neglect,' or other serious misconduct" on the part of the Government, "as well as prejudice to the defendant." *United States v. Gaskin*, 364 F.3d 438, 451 n.3 (2d Cir. 2004) (citing *United States v. Taylor*, 487 U.S. 326, 338–39 (1998)).

## III.    ANALYSIS

### A.    *Barker* Factors

In assessing whether to dismiss this indictment, I apply the *Barker* factors used to analyze delay under Rule 48(b) and the Sixth Amendment: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.   407 U.S. at 530.   Based on these factors, I conclude that the delay here is sufficiently egregious to warrant dismissal.[1]

### 1.    Length of Delay

First, I will consider whether the delay "was uncommonly long" such that it is clear the Government has not proceeded "with customary promptness." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992).  This analysis of the length of the delay is "actually a double enquiry," with the Court first considering whether the alleged delay is "presumptively prejudicial" and next considering whether the delay is "tolerable" based on the circumstances of the case. *United States v. Homaune*, 898 F. Supp. 2d 153, 168–69 (D.D.C. 2012) (quoting *Doggett*, 505 U.S. at 652).   As for what makes a delay

---

[1] Because I decide that dismissal is warranted under Rule 48(b), I need not assess whether the Government has separately violated the Speedy Trial Act or defendant's rights under the Sixth Amendment. *See Starr*, 434 F. Supp. at 216–17.

"presumptively prejudicial," other circuits have "generally found a delay exceeding one year" to meet the threshold, and our Circuit "has not questioned that rule of thumb." *Homaune*, 898 F. Supp. 2d at 168–69 (citing *United States v. Taylor*, 497 F.3d 673, 677 (D.C.Cir.2007)); *see also United States v. Bikundi*, 926 F.3d 761, 779 (D.C. Cir. 2019). However, this determination is "necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530–31.

Here, a total of 260 days elapsed between the filing of the second indictment in January 2025 to the defendant's motion to dismiss in October 2025. If you include the time this motion has been pending, the delay reaches one year. Accordingly, the delay in this case either meets or falls just under the threshold of being "presumptively prejudicial." *Homaune*, 898 F. Supp. 2d at 168–69; *Bikundi*, 926 F.3d at 779. But considering only the delay since January 2025 of course misses the full story!

While a nine- to twelve-month delay is not unheard of in criminal prosecutions, the "peculiar circumstances" of this case make the delay considerably more egregious. *Barker*, 407 U.S. at 530–31. Tracing back to the original indictment brought in June 2022, Grabinski has now been incarcerated for nearly 43 months. According to the defense, this is "twice the amount of time he likely would have served had he accepted the government's prior plea offer." Supp. Reply at 5. And it approaches the same amount of time he would have served if he had plead guilty to both counts of the original indictment! *See* 18 U.S.C. § 970(a) (statutory maximum of five years for attempted destruction of property belonging to foreign government); 18 U.S.C. § 844(i) (statutory minimum of five years for arson). Put together, defendant has been exposed to repeated delays resulting in a term of

incarceration that is likely *longer* than he could have anticipated at the outset. As such, the full context of defendant's saga shows that the Government has hardly proceeded with the "customary promptness" required in criminal prosecution. *Doggett*, 505 U.S. at 651–52. Accordingly, I now turn "to the other *Barker* factors to examine if the delay is justifiable, as delay alone is not necessarily a sufficient condition to dismiss a case." *Gaffney*, 2025 WL 3123668, at *13 (citation omitted).

### 2.    Reason for the Delay

Who indeed is "more to blame": the Government or the criminal defendant? *See Vermont v. Brillon*, 556 U.S. 81, 90 (2009). "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657. Indeed, the Government may not plead negligence—or the change of presidential administration—and get a free pass "since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Brillon*, 556 U.S. at 90.

As such, the Government here is clearly "more to blame." *Id.* To be sure, the defense filed the motion to initiate competency proceedings. But once those proceedings began, it fell to the Government to ensure they proceeded as swiftly as possible. *See Hensley*, 2024 WL 3673612, at *10 ("If the Government charges a defendant who may need competency evaluation and restoration, it bears the responsibility to ensure that he is promptly evaluated and, if necessary, promptly brought to a facility for treatment."). The Government unfortunately neglected its responsibility time and time again!

9

Indeed, the Government's attitude toward this case can best be described as somewhere between "persistent neglect" and callous indifference, indicating "an uncommonly feeble interest in bringing an accused to justice." *Doggett*, 505 U.S. at 657. What else can one conclude when I directed the Government to file regular status reports during the pendency of defendant's competency evaluation and notify the Court upon the completion of the evaluation but the Government did neither? *See* Order (Apr. 11, 2025). Moreover, after defendant returned to D.C. from competency evaluation, I directed the parties to file a joint status report and specifically requested the Government's position on whether to refer defendant to competency restoration. *See* Min. Order (Aug. 14, 2025). The Government failed to provide its position by the deadline, apparently forgetting to file an already-drafted joint status report for nearly two months. And further still, the Government failed to timely respond to Defendant's motion to dismiss, technically waiving its response to the motion.[2]

The Government acknowledges the delays in this case but states that these amounted to mere negligence. In particular, the lead prosecutor in this case was preparing for a complex trial at the time. While this Court appreciates the serious demands on federal prosecutors, a busy docket does not excuse ignoring court-ordered deadlines while a presumed innocent man sits idly behind bars for months. As the Supreme Court has warned, "[c]ondoning prolonged and unjustifiable delays in prosecution would both

---

[2] Defendant asks this Court to find that the Government conceded the motion to dismiss for failing to timely respond. *See* Mot. to Treat as Conceded, No. 25-cr-19 [Dkt. #27]. Though the Government technically waived its response and I "may treat the motion as conceded," Local Rule 47(b), I find the Government's response without merit regardless of its tardiness. Therefore, the Court allows the Government's late filing and decides the motion on the merits.

penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority." *Doggett*, 505 U.S. at 657. When it comes to respecting the basic constitutional rights of criminal defendants, being busy is not an excuse!

The Government's negligence in this case is especially appalling, of course, given my prior order dismissing the original indictment for Speedy Trial Act violations. In that Order, I "strongly encourage[d] the Government to be more cognizant of Speedy Trial issues in the future" and stated my expectation that dismissal without prejudice would be "sufficient motivation" to ensure a swift process upon re-indictment. *See* Mem. Opinion, No. 21-cr-221 [Dkt. #56], at 10. Moreover, the Government indicated to the Court that it "could likely reindict Grabinski quickly and proceed to trial." *Id.* Given that the Government was on notice that additional unnecessary delays were unacceptable and would be looked upon unfavorably by this Court, the Government's continued negligence in this case is all the more inexcusable. Accordingly, the Government's "egregious persistence in failing to prosecute" Grabinski cuts clearly in favor of dismissal. *Doggett*, 505 U.S. at 657.

### 3.    Defendant's Assertion of the Right

Under the third factor, I consider the defendant's assertion of his speedy trial rights. *Id.* at 651. This factor too weighs in favor of dismissal. As conceded by the Government, the Defendant has *repeatedly* asserted his right to a speedy trial at multiple junctures. *See* Supp. Br. at 7. Defendant has done what he needs to do to assert his rights. *See United States v. Demirtas*, 204 F. Supp. 3d 158, 193 (D.D.C. 2016).

11

### 4.    Prejudice to the Defendant

Under the fourth factor, I consider the extent that the alleged delay has prejudiced the defendant. *Doggett*, 505 U.S. at 654. Three kinds of prejudice are relevant to this inquiry: "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Id.* (cleaned up).

The Government argues that defendant has not been prejudiced by the delay and, if anything, the prejudice has been against the *Government*, not defendant, due to the possibility of fading memories and lost witnesses. Supp. Br. at 7. Please! I manifestly disagree. The "core concern" of our Constitution's speedy-trial guarantee is "impairment of liberty," not the preservation of evidence. *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986); *see also United States v. Marion*, 404 U.S. 307, 320 (1971) ("[T]he major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense.").

Here, the defendant has undoubtedly been prejudiced by his lengthy pretrial incarceration. He has spent nearly 43 months incarcerated despite never reaching trial. And for the last seven months, he has been languishing in difficult conditions at the D.C. Jail while awaiting competency restoration. Indeed, the Government's neglect effectively withheld Mr. Grabinski from needed medical treatment, which makes the prejudice all the more significant. *See DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 199–200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some

12

responsibility for his safety and general well-being."). As such, the Government's neglect did real harm to defendant. Indeed, this is just the sort of "oppressive pretrial incarceration" the Sixth Amendment is meant to guard against. *Barker*, 407 U.S. at 532.

As for any potential evidentiary prejudice, neither side has presented concrete details of lost witnesses or fading memories. Indeed, the passage of time in bringing a defendant to trial "presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655. Accordingly, the prejudice wrought by diminished memory and lost witnesses cuts in favor of neither party.

*    *    *

In sum, all four *Barker* factors weigh in defendant's favor. The delay here was unusually lengthy given the full context of this case—an indictment dismissed for Speedy Trial Act violations followed by a second indictment that was again beset by prosecutorial neglect. The Government's only excuse is a busy schedule. And all the while, defendant has been subjected to pretrial incarceration for 43 months and has, for the last seven months, been stuck in D.C. Jail while his competency restoration proceedings have stalled. Put simply, the full circumstances of the case weigh in favor of dismissing the indictment under Rule 48(b).[3]

---

[3] Because I conclude that dismissal is warranted under Rule 48(b), I need not decide whether dismissal is separately required under the Speedy Trial Act. Even so, the Government's position that there has been no Speedy Trial Act violation is dubious. The Speedy Trial Act calculation in this case centers on the 126 days that passed from the completion of defendant's competency evaluation on June 4, 2025 to defendant's filing of the motion to dismiss on October 8, 2025. The Government contends that the Speedy Trial clock was stopped the entire time, pursuant to the exclusion for "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." 18 U.S.C. § 3161(h)(1)(A). The Government's interpretation, however, would create a loophole in the Speedy Trial Act to allow indefinite detention of a defendant stuck between a commitment order and an ultimate

### C.    Dismissal With or Without Prejudice

With the *Barker* factors weighing in favor of dismissal, the remaining open question is whether to dismiss the indictment with or without prejudice.  Courts have authority to dismiss cases with prejudice under Rule 48(b) even absent any constitutional violation.  *See United States v. Simmons*, 536 F.2d 827, 832 (9th Cir. 1976).  While dismissal without prejudice is "not a toothless sanction," dismissal *with* prejudice "sends a stronger message . . . and is more likely to induce salutary changes in procedures." *United States v. Ferguson*, 565 F. Supp. 2d 32, 47–48 (D.D.C. 2008).  Indeed, dismissal with prejudice may be appropriate where defendant has shown "a pattern of neglect, or other serious misconduct, as well as prejudice to the defendant." *Gaskin*, 364 F.3d at 451 n.3 (cleaned up) (citing *Taylor*, 487 U.S. at 338–39).

I conclude here that dismissal with prejudice is particularly appropriate given the "pattern of neglect" in this case spanning three and a half years. *Taylor*, 487 U.S. at 338–39.  This is the second time this Court has had to consider a motion to dismiss an indictment against this defendant for repeated delays by the Government.  While, in *Grabinski I*, the

---

competency determination. *See* Opp'n at 9 (arguing that the exclusion applies "until the competency proceedings have concluded").  Languishing in D.C. Jail for months while the Government ignores court-ordered deadlines is not, in any sense of the word, a "proceeding" to determine the defendant's competency. *See United States v. Beler*, 2019 WL 5789747, at *12 (D.D.C. Nov. 6, 2019) (noting that "ongoing proceedings" are required to trigger the exclusion in section 3161(h)(1)(A)); *see also United States v. Bauer*, 286 F. Supp. 2d 31, 34 (D.D.C. 2003) ("Defendant's sitting in a jail cell waiting to be transported cannot possibly be described as a proceeding and, therefore, invoke this exclusion.").  The Government's interpretation would also render meaningless the other provisions of the Speedy Trial Act that apply in the context of competency proceedings, including the requirement that transportation delays be limited to 10 days. *See* 18 U.S.C. § 3161(h)(1)(F).  Ultimately, I need not decide this question today.  But to the extent the Government's interpretation of the Speedy Trial Act is correct, it makes dismissal under Rule 48(b) even more appropriate. *See Gaffney*, 2025 WL 3123668, at *19 (dismissing indictment under Rule 48(b) where Government exploited a "loophole" in the Speedy Trial Act).

delays were attributable to "isolated" issues rooted in "miscommunication," as well as due to the COVID-19 pandemic, *see* Mem. Opinion, No. 22-cr-221 [Dkt. #56], at 9, the Government has no similar excuses here. The delays in *Grabinski II* are attributable only to the Government's own negligence. It is necessary, unfortunately, to send a "stronger message" here and hopefully "induce salutary changes in procedures" to avoid the kind of blatant docket mismanagement exhibited in this case. *Ferguson*, 565 F. Supp. 2d at 47–48.

Further, as I have already concluded, there has been "prejudice to the defendant." *Gaskin*, 364 F.3d at 451 n.3. Defendant has spent nearly 43 months incarcerated, with the last seven months spent awaiting competency restoration in the D.C. Jail. He has also faced "emotional stress" from continued "uncertainties in the prospect of facing public trial," *Strunk v. United States*, 412 U.S. 434, 439 (1973)—just what the speedy trial guarantee was meant to remedy.

## IV.    CONCLUSION

For the *second* time, this Court is being asked to refrain from dismissing this indictment for excessive delays, this time due to the Government's own negligence. The Court will not allow the Government a third bite at this apple. For the foregoing reasons, defendant's motion to dismiss is **GRANTED** and the indictment is hereby **DISMISSED** with prejudice!

**SO ORDERED.**

RICHARD J. LEON
United States District Judge

15